## Reap's Case.

*Election law—Order by majority of court—Contempt—Courts—Judges.*

1. Where two judges of a bench of three issue an order conflicting with an order of the third, the sheriff is in contempt if he refuses to obey the majority order.

2. Circumstances may modify the extent of the offending, but will not excuse it.

3. If one of three judges is confined at home by illness, he may join with a colleague making an effective majority and sign papers at his home.

4. There is no demarcation between what a judge does at the court and what he does elsewhere, if the act lies within the scope of his judicial authority.

5. It would be intolerable if an officer could repudiate the authority of an order of court signed "By the Court" and by name of the majority of the judges.

6. It is obvious that the judges should concur in such final orders as ouster and appointment of election officers, and, in order to maintain authority, such concurrence should be respected.

Rule to show cause in contempt proceeding. Q. S. Lackawanna Co., Nov. Sess., 1925, No. 321.

*Walter L. Hill* (with him *David J. Davis, Clarence Balentine* and *Joseph B. Jenkins*), for rule.

*Leon M. Levy* (with him *David J. Reedy* and *Joseph O'Brien*), for respondents.

FULLER, P. J., 11th judicial district, specially presiding, Dec. 12, 1925.— Judge Maxey's exhaustive statement of fact and law in this proceeding leaves little for me to say except to summarize.

Reap's Case.

On the facts therein set forth, the conclusion of law seems certain that the sheriff and his deputy, McLane, by defiant disobedience to the order signed by Judge Edwards and Judge Maxey, are guilty of contempt under our statute, on principle as defined in the decisions, and, as we must adjudge, on policy for the protection of judicial authority.

The rule designates the chief respondent as "Jim" Reap, and in his answer he adopts that designation, so we assume, in order to avoid the appearance of familiarity, that "Jim" is not the affectionate diminutive for James, but the entire Christian name of the individual.

It seems that Jim Reap and his deputies took it upon themselves to repudiate an order of this court, as hereinafter set forth, and so brought upon themselves the present rule for contempt.

The pertinent facts are here stated.

The court was then composed of three judges, Hon. H. M. Edwards, President, since deceased; Hon. E. C. Newcomb and Hon. George W. Maxey, additional judges.

On Nov. 5th, Judge Newcomb, without consulting his colleagues, signing "By the Court," undertook by summary order to oust from office the entire election board in a certain election district and to appoint an entire new board.

Later, on the same day, the other two judges, signing "By the Court" and by name, "H. M. Edwards, P. J., Maxey, J.," undertook by summary order to oust the new board appointed by Judge Newcomb, and reinstate the old board elected by the people, directing the new board to surrender their certificates and the old board to function, and concluding thus: "Sheriff Jim Reap is directed to carry this order into effect at once."

Judge Edwards was sick at the time and the order was signed by him at his home.

The sheriff and his deputy, McLane, flatly refused to recognize the authority of the two judges to make such an order, and undertake to justify such refusal on the grounds (1) that it conflicted with the previous order of Judge Newcomb; (2) that it was signed by Judge Edwards at his home and not in court.

1. On the authority of the local decision, In re Computation Archbald Borough, 26 Lacka. Jurist, 229, the first order, being made by only one judge out of three, was a nullity; but be this as it may, we cannot doubt that if the signature of Judge Edwards was valid, the subsequent order signed by the two judges superseded the first, as respondents knew, or if they did not know, they should have sought advice thereon, although it is fair to consider the possibility that they may have been perplexed between the two fires, which perplexity might operate to reduce the offence from wilful to constructive contempt.

2. The second ground presents a more serious question.

It is plain that the signature of Judge Edwards was essential to make the signature of Judge Maxey effective, and, therefore, if the signature of Judge Edwards, at his home, was invalid, the order could not take effect and its repudiation would not constitute contempt.

The respondents, to support their claim of invalidity, rely upon appellate definition of a "court" as laid down in Carter's Estate, 254 Pa. 527, with subsequent recognition as late as McCormick's Contested Election, 281 Pa. 281, all cited in Computation Archbald Borough, 26 Lacka. Jurist, 229, viz.: "By 'court' is to be understood a tribunal officially assembled under authority of law at the appropriate time and place for the administration of justice.

By 'judge' is to be understood simply an officer or member of such tribunal. Whether an act is to be performed by one or the other is generally determined by the character of the act, but whenever it is a statutory power or duty conferred or prescribed upon the court, it can only be discharged by the assembled tribunal, however composed, whether of one judge or several."

We would say that any time or place is appropriate if the number required to function be present.

If one of three judges is prevented by illness from coming to the courthouse, I would say he could join with a colleague to make an effective majority by signing at home.

The definition of a court, above quoted, we assume, was not intended to paralyze judicial action, as it would do if pressed too hard under circumstances which constitute an emergency.

There is no sacred line of demarcation between what a judge does at the court-house and what he does elsewhere, if the act lies within his authority as a judge, and, *a fortiori*, none between what two judges, composing a majority, do, if the act lies within their joint authority as judges.

It would put an intolerable strain upon the administration of law if an officer like the sheriff, subject to the orders of court, should be permitted to question and repudiate the authority of an order in due form, signed "By the Court" and by name of a majority.

The strong arm of the law would be smitten with paralysis if such an attitude should be permitted to prevail unrebuked and unpunished.

It has become common practice, in the interest of convenience and celerity, for a single judge to sign orders of any kind, at any time, at any place, and in election matters he may rightly act alone on interlocutory application to impound ballot-boxes or the like.

But it is obvious that, in order to maintain uniformity, a majority of the judges should concur in such final orders as the ouster or appointment of election officers, and in order to maintain authority, such concurrence should be respected.

In overruling both contentions of the respondents and adjudging guilty of contempt, we are bothered, on first thought, with a consideration which seemed to be an obstacle, viz., that the order whose repudiation forms the ground of complaint was aimed at the members of the two boards, does not specify how the sheriff should "carry it into effect," and, perhaps, might be regarded as one which he could not carry into effect at all.

If it had been a direction to serve the order upon the boards, or if it had specified any particular manner of service, disobedience thereto would unquestionably be contempt, but as it merely orders the members of one board to quit, and the members of the other board to act, it would seem that their refusal to recognize its mandate, or some other circumstances not established, should exist before the sheriff could be called upon to function in the matter.

Inasmuch, however, as this consideration has not been urged, probably because the respondents knew what they were expected to do from having previously acted on a similar order by Judge Newcomb, we conclude that the consideration should be disregarded.

The punishment to be imposed should be left, as we leave it, to the discretion of Judge Maxey.

From William A. Wilcox, Scranton, Pa.